LIVE OAK LAW OFFICE LLP
Robyn Fass Wang (SBN 194006)
Pilar R. Stillwater (SBN 260467)
1442A Walnut Street #229
Berkeley, California 94709
Telephone: 510.637.9349
rfasswang@liveoaklawoffice.com
pstillwater@liveoaklawoffice.com

Attorneys for Plaintiff
RICHARD SMITH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Richard Smith,<br><br>          Plaintiff,<br><br>     v.<br><br>OFFICE OF THE ORANGE COUNTY PUBLIC DEFENDER, a public entity, ORANGE COUNTY, a public entity, THE ORANGE COUNTY BOARD OF SUPERVISORS, a public entity, SHARON PETROSINO, an individual, FRANK OSPINO, an individual, and DEBORAH KWAST, an individual.<br><br>          Defendants. | Case No. 8:24-cv-1920<br><br>**COMPLAINT FOR DAMAGES**<br><br>**CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983**<br><br>**1. DELIBERATE INDIFFERENCE TO CONSTITUTIONAL VIOLATIONS**<br><br>**2. MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT                                                    CASE NO. 8:24-cv-1920

**INTRODUCTION**

1. Richard Smith ("Mr. Smith" or "Plaintiff") was detained without a trial in the Orange County Jail and then the California Department of State Hospitals—Atascadero and Coalinga (collectively, "DSH")—for more than 20 years without recourse on a petition for civil commitment.[1] Mr. Smith's public defenders failed to challenge his unlawful detention in any way for more than a decade, in violation of his right to due process under the Fourteenth Amendment of the United States Constitution. And despite repeated opportunities, no other state actor came to his aid: the Superior Court repeatedly continued or stayed his case for more than two decades, often without finding good cause, and the prosecutors responsible for his case were content that Mr. Smith was detained, with or without a proper legal determination that he met the criteria for civil commitment.

2. As a result, Mr. Smith spent more than 20 years in jail or at DSH without a trial to determine whether he was or was not an SVP—the sole basis for his detention. Mr. Smith was finally released when, in 2022, the Superior Court required the People to go to trial. Because they were not able to present either a state or a retained evaluator who found Mr. Smith to be an SVP, the People declared that they were unready for trial and the Court dismissed the SVP petition.

3. Under California Welfare and Institutions Code Section 6600, *et seq.*, the Sexually Violent Predator Act (SVPA), "the state can civilly commit individuals found to be SVPs after they conclude their prison terms." *People v. DeCasas*, 54 Cal. App. 5th 785, 802 (2020) (citations omitted).[2] The dual purposes of the SVPA "are to protect the public from dangerous felony offenders with mental

---

[1] California Welfare and Institutions Code §§ 6600-6604.

[2] The California Supreme Court recently disapproved *DeCasas*, along with *People v. Tran*, 62 Cal. App. 5th 330 (2021); *In re Butler*, 55 Cal. App. 5th 614 (2021); *People v. Bradley*, 264 Cal.Rptr.3d 819; and *People v. Superior Court (Vasquez)*, 27 Cal. App. 5th 36 (2018), but only to the extent these courts presumed prejudice to the pre-trial detainee based on only the length of pre-trial delay. *See Camacho v. Superior Ct.*, 15 Cal. 5th 354 (2023). These cases were otherwise affirmed. *See id.*

COMPLAINT                                1                          CASE NO. 8:24-cv-1920

disorders and to provide mental health treatment for their disorders." *People v. Superior Court (Vasquez)*, 27 Cal. App. 5th 36, 42 (2018). If the trial court finds probable cause, an alleged SVP is entitled to the following:

> a trial by jury, the assistance of counsel, the right to retain experts or professional persons to perform an examination on his or her behalf, and [to] have access to all relevant medical and psychological records and reports. In the case of a person who is indigent, the court shall appoint counsel to assist him or her, and, upon the person's request, assist the person in obtaining an expert or professional person to perform an examination or participate in the trial on the person's behalf.

*Vasquez*, 27 Cal. App. 5th at 42 (citing former § 6603, subd. (a)).[3] "A unanimous verdict shall be required in any jury trial." *Id.* at 44 (Citing former § 6603, subd. (d)). Proof at trial that a person is an SVP must be beyond a reasonable doubt." *Id.* (citing § 6604).

4. The SVPA also requires a trial at a meaningful time. *People v. Litmon*, 162 Cal. App. 4th 383 (2008). Delays caused by a defense attorney are attributed to the state rather than to the respondent when there is a breakdown in the defense system, or where an alleged SVP has not agreed to his defense attorney's unauthorized waiver of, e.g., his appearance at hearings or his right to a trial. *See Vasquez,* 27 Cal. App. 5th at 56. California courts have found due process violations where the state was responsible for, inter alia, delays of three, five, and twelve years. *See, e.g., People v. Superior Court (Vasquez),* 27 Cal. App. 5th 36, 56 (2018), *reh'g den.* (Sept. 27, 2018), *rev. den.* (Dec. 19, 2018); *In re Terrance Butler*, 55 Cal. App. 5th 614 (2020); *People v. DeCasas*, 54 Cal. App. 5th 785 (2020).[4]

5. Mr. Smith was detained for more than two decades before he was released from detention without ever having had a trial. Had a trial taken place, if

---

[3] All statutory references are to California's Welfare and Institutions Code unless otherwise noted. Citations to former SVPA sections are to the law as it existed in 2013, except where otherwise noted.

[4] *See supra* note 2.

COMPLAINT          -2-          CASE NO. 8:24-cv-1920

Mr. Smith prevailed, he would have been released forthwith.  However, *even if Mr. Smith had been found to be an SVP and had been committed as such*, he would have been entitled to petition the court for release every year thereafter. Cal. & Welf. & Inst. Code, §§ 6604, 6604.9, 6608(a). Because Mr. Smith never received the trial he repeatedly requested, he was never even eligible to petition for his release.

6.    Mr. Smith's public defenders' deliberate indifference to his extraordinarily long and unconstitutional detention violated his civil rights.

7.    The Orange County Public Defender ("OCPD"), their deputies, and the County of Orange failed to carry out their statutory and ethical duties to Mr. Smith, in violation of his constitutional rights under 42 U.S.C. § 1983. The present action ("Action") brings to light the  failure of the OCPD, the Orange County Board of Supervisors, and the individually named defendants (collectively, the "Defendants") to carry out their statutory and ethical duties, and the injustice caused by these Defendants with respect to a number of individuals who have been detained for decades without ever having their case adjudicated at trial as required by the United States Constitution.

8.    Mr. Smith is entitled to compensation for the 20 years of his life that he lost because of Defendants' violation of and deliberate indifference to his civil rights, and the harm of being denied his right to defend himself from the civil commitment petition. Mr. Smith is also entitled to punitive damages to deter future similar conduct, and to ensure that other similarly situated public officials carry out their obligations under the Constitution of the United States.

## JURISDICTION AND VENUE

9.    This civil action alleges violations of the Fourteenth Amendment of the United States Constitution as protected by 42 United States Code (U.S.C.) §§ 1983 and 1988. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

COMPLAINT                           -3-                    CASE NO. 8:24-cv-1920

10. Venue is proper in this Court under 28 U.S.C. §§ 1391(b), because all incidents, events, and occurrences giving rise to this action occurred in the County of Orange, California.

## DIVISIONAL ASSIGNMENT

11. Venue is proper in this Court pursuant to Civil Local Rule 3-2(c) because all incidents, events, and occurrences giving rise to this action occurred in the County of Orange, California.

## PARTIES

### A. Plaintiff

12. At all relevant times, Plaintiff Richard Smith was a resident of Orange County, California. However, during the events giving rise to this Action, Mr. Smith was alternately detained in the California Department of Corrections and Rehabilitation (CDCR), in an Orange County Jail, and at the California Department of State Hospitals—Atascadero, located in San Luis Obispo County, and Coalinga (CSH), located in Fresno County.

### B. Defendants

#### 1. Martin Schwarz

13. Defendant Martin Schwarz is and has been the Orange County Public Defender (OCPD) since May 11, 2021. In his role as Public Defender, he is vested by law with the responsibility of administering and supervising the representation of indigent defendants in Orange County at all stages of civil detention and criminal proceedings.[5]

14. With respect to all alleged conduct taking place between May 11, 2021, and the date of this Complaint, Martin Schwarz acted under the color of law and in the course and scope of his employment with Orange County. He was a

---

[5] *See, e.g.*, https://www.pubdef.ocgov.com/about-us, last visited Aug. 23, 2024 ("Recognized as a leader nationwide, the Orange County Public Defender safeguards the Constitutional rights of all by providing high-quality, cost-effective legal services to the indigent of Orange County.").

COMPLAINT                    -4-                    CASE NO. 8:24-cv-1920

high-ranking administrator and policymaker. At no point did he appear as counsel for Mr. Smith or otherwise represent him. His liability is based on his role as administrator of the Office of the OCPD, as well as his acquiescence in the unconstitutional practices which resulted in Mr. Smith's harm and damages as alleged in this Action.

15. As the OCPD, Martin Schwarz:

    a. Developed, adopted, ratified, implemented, modified, abolished, revoked, and rescinded customs, practices, procedures, and policies of the Office of the OCPD;

    b. Developed and implemented training programs for deputy public defenders;

    c. Secured budget allocations for specific units, personnel needs, and cases within his office;

    d. Declared that the Office of the OCPD was unavailable and thereby directed the court to appoint alternate defenders;

    e. Declared conflicts of interest; and

    f. Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

16. Martin Schwarz monitored the civil commitment proceedings of Richard Smith from his appointment until Mr. Smith's release. He had specific knowledge of the proceedings against Mr. Smith and was deliberately indifferent to Mr. Smith's excessively prolonged detention and the resulting violation of his civil rights.

17. Martin Schwarz is sued in his personal capacity as a supervisory and administrative employee for his own culpable action or inaction in the training, supervision and/or control of his subordinates. He is also sued in his official capacity for his acquiescence in the constitutional deprivations and for the conduct

COMPLAINT                                    -5-                        CASE NO. 8:24-cv-1920

that showed a reckless or callous indifference to Mr. Smith's rights. He acquiesced to and ratified his subordinates' practices and policies, which he knew or should have known would inflict a constitutional violation upon Mr. Smith and others similarly situated.

### 2.  Sharon Petrosino

18.  Defendant Sharon Petrosino was the Orange County Public Defender from January 1, 2015, when she was appointed Interim Public Defender and then, in June 2016, as OCPD, until July 2, 2020. In her role as Interim Public Defender and Public Defender, she was vested by law with the responsibility of administering and supervising the representation of indigent defendants in Orange County at all stages of civil detention and criminal proceedings.

19.  With respect to all alleged conduct taking place between January 1, 2015, until her retirement on July 2, 2020, Sharon Petrosino acted under the color of law and in the course and scope of her employment with Orange County. She was a high-ranking administrator and policymaker. At no point did she appear as counsel for Mr. Smith or otherwise represent him. Her liability is based on her role as administrator of the Office of the OCPD, as well as her acquiescence in the unconstitutional practices which resulted in Mr. Smith's harm and damages as alleged in this Action.

20.  As the OCPD, Sharon Petrosino:

   a.  Developed, adopted, ratified, implemented, modified, abolished, revoked, and rescinded customs, practices, procedures, and policies of the Office of the OCPD;

   b.  Developed and implemented training programs for deputy public defenders;

   c.  Secured budget allocations for specific units, personnel needs, and cases within her office;

COMPLAINT                           -6-                    CASE NO. 8:24-cv-1920

    d. Declared that the Office of the OCPD was unavailable and thereby directed the court to appoint alternate defenders;

    e. Declared conflicts of interest; and

    f. Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

21. Sharon Petrosino monitored the civil commitment proceedings of Richard Smith from 2016 until 2021. She had specific knowledge of the proceedings and was deliberately indifferent to Mr. Smith's prolonged detention and the resulting violation of his civil rights.

22. Sharon Petrosino is sued in her personal capacity as a supervisory and administrative employee for his own culpable action or inaction in the training, supervision and/or control of her subordinates. She is also sued in her official capacity for his acquiescence in the constitutional deprivations and for the conduct that showed a reckless or callous indifference to Mr. Smith's rights. She acquiesced to and ratified her subordinates' practices and policies, which she knew or should have known would inflict a constitutional violation upon Mr. Smith and others similarly situated.

### 3. Frank Ospino

23. Defendant Frank Ospino was the Orange County Public Defender from January 27, 2012, to December 30, 2015. In his role as Public Defender, he was vested by law with the responsibility of administering and supervising the representation of indigent defendants in Orange County at all stages of civil detention and criminal proceedings.

24. With respect to all alleged conduct taking place between January 27, 2012, and December 30, 2015, Frank Ospino acted under the color of law and in the course and scope of his employment with Orange County. He was a high-ranking administrator and policymaker. At no point did he appear as counsel for Mr. Smith

COMPLAINT         -7-          CASE NO. 8:24-cv-1920

or otherwise represent him. His liability is based on his role as administrator of the Office of the OCPD, as well as his acquiescence in the unconstitutional practices which resulted in Mr. Smith's harm and damages as alleged in this Action.

25. As the OCPD, Frank Ospino:

a. Developed, adopted, ratified, implemented, modified, abolished, revoked, and rescinded customs, practices, procedures, and policies of the Office of the OCPD;

b. Developed and implemented training programs for deputy public defenders;

c. Secured budget allocations for specific units, personnel needs, and cases within his office;

d. Declared that the Office of the OCPD was unavailable and thereby directed the court to appoint alternate defenders;

e. Declared conflicts of interest; and

f. Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

26. Frank Ospino monitored the civil commitment proceedings of Richard Smith from January 27, 2012, to December 30, 2015. He had specific knowledge of the proceedings against Mr. Smith and was deliberately indifferent to Mr. Smith's excessively prolonged detention and the resulting violation of his civil rights.

27. On information and belief, at some point in Mr. Smith's exceptionally long detention, Mr. Ospino appeared in Mr. Smith's case on behalf of the OC Alternate Public Defender. The extent of his representation of Mr. Smith is unclear.

28. Frank Ospino is sued in his personal capacity as a supervisory and administrative employee for his own culpable action or inaction in the training, supervision and/or control of his subordinates. He is also sued in his official

COMPLAINT                                    -8-                        CASE NO. 8:24-cv-1920

capacity for his acquiescence in the constitutional deprivations and for the conduct that showed a reckless or callous indifference to Mr. Smith's rights. He acquiesced to and ratified his subordinates' practices and policies, which he knew or should have known would inflict a constitutional violation upon Mr. Smith and others similarly situated.

### 4. Deborah Kwast

29. Defendant Deborah Kwast was the Orange County Public Defender from January 2003, until August 2, 2011. In her role as Public Defender, she was vested by law with the responsibility of administering and supervising the representation of indigent defendants in Orange County at all stages of civil detention and criminal proceedings.

30. With respect to all alleged conduct taking place between January 2003, and August 2, 2011, Deborah Kwast acted under the color of law and in the course and scope of her employment with Orange County. She was a high-ranking administrator and policymaker. At no point did she appear as counsel for Mr. Smith or otherwise represent him. Her liability is based on her role as administrator of the Office of the OCPD, as well as her acquiescence in the unconstitutional practices which resulted in Mr. Smith's harm and damages as alleged in this Action.

31. As the OCPD, Deborah Kwast:

    a. Developed, adopted, ratified, implemented, modified, abolished, revoked, and rescinded customs, practices, procedures, and policies of the Office of the OCPD;

    b. Developed and implemented training programs for deputy public defenders;

    c. Secured budget allocations for specific units, personnel needs, and cases within her office;

    d. Declared that the Office of the OCPD was unavailable and thereby directed the court to appoint alternate defenders;

COMPLAINT -9- CASE NO. 8:24-cv-1920

    e. Declared conflicts of interest; and

    f. Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

32. Deborah Kwast monitored the civil commitment proceedings of Richard Smith from January 2003, until August 2, 2011. She had specific knowledge of the proceedings and was deliberately indifferent to Mr. Smith's prolonged detention and the resulting violation of his civil rights.

33. Deborah Kwast is sued in her personal capacity as a supervisory and administrative employee for his own culpable action or inaction in the training, supervision and/or control of her subordinates. She is also sued in her official capacity for his acquiescence in the constitutional deprivations and for the conduct that showed a reckless or callous indifference to Mr. Smith's rights. She acquiesced to and ratified her subordinates' practices and policies, which she knew or should have known would inflict a constitutional violation upon Mr. Smith and others similarly situated.

### 5. Defendant Office of the OCPD

34. "The role of the Orange County Public Defender's Office is to provide quality representation to indigent clients in an efficient and cost-effective manner."[6]

35. At all times mentioned herein, Defendant Office of the OCPD was a public entity, and subdivision of Orange County, duly organized and existing under and by virtue of the laws of the State of California and the Charter of Orange County, with the capacity to sue and be sued. The Office of the OCPD is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, departments, subdivisions, and units, including those handling SVP petitions and other civil commitments.

---

[6] *See* https://www.pubdef.ocgov.com/about-us/history, last visited Aug. 23, 2024.

COMPLAINT            -10-            CASE NO. 8:24-cv-1920

### 6.    Defendant Orange County Board of Supervisors

36.    The Orange County Board of Supervisors is the legislative and executive body of the Orange County government with the capacity to sue and be sued. The Board of Supervisors of Orange County:

> oversees the management of the County government and its many special districts. In its legislative duties, the Board adopts ordinances, resolutions and minute orders within the limits prescribed by State law. As an executive body, the Board:
>
> - Establishes policy
> - Approves the annual budget
> - Appoints a[] . . . Public Defender. . . .
> - Approves contracts for projects and services; . . .
> - Makes appointments to boards, committees and commissions.[7]

37.    Per its responsibilities to manage, supervise and administer the Office of the OCPD, the Board of Supervisors had the authority to:

    a.    ensure sufficient budget allocations to the OCPD such that its case load could be properly administered and its clients' cases could be diligently pursued;

    b.    instruct the OCPD to declare that the OCPD is "unavailable" and thereby have a case assigned to another public defender agency or to an alternate public defender;

    c.    ensure that competent and diligent court-appointed alternate counsel were available for indigent defendants if the OCPD had a conflict, and ensure sufficient budget allocations to the alternate counsel program; and

---

[7] *See* https://board.ocgov.com/about-board, last visited Aug. 23, 2024.

COMPLAINT            -11-            CASE NO. 8:24-cv-1920

d.  establish policy to develop and implement specific training programs for all personnel in the OCPD's Office, including those handling SVP petitions and other civil commitments.

38.    The Board of Supervisors received regular memoranda, emails, reports, budget requests, and other written correspondence and documents from members of the OCPD regarding the management and operation of its representation of indigent defendants, including the status of the civil detention proceedings of Mr. Smith, and others similarly situated. The Board of Supervisors, as spelled out herein below, was deliberately indifferent to the violation of Mr. Smith and other similarly situated detainees' civil rights. As such, the Board of Supervisors was aware of or should have been aware of Mr. Smith's SVP case, the long delay in getting his case to trial, and the unconstitutional customs and practices which caused the delays in getting Mr. Smith and other similarly situated detainees' case to trial.

39.    The Board of Supervisors' affirmative conduct, as described herein below, includes its acquiescence to and ratification of specific conduct and policies of the OCPD's Office, which this defendant knew, or should have known, would inflict a constitutional violation upon Mr. Smith and others similarly situated.

**7.    Defendant Orange County**

40.    At all times mentioned herein, defendant Orange County is and was a public entity duly organized and existing under and by virtue of the laws of the State of California, with the capacity to sue and be sued. Defendant Orange County is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, departments, subdivisions, and agencies.

41.    Defendant County of Orange operates, manages, directs and/or controls the OCPD's office, which is also a separate public entity, and is responsible for ensuring that the OCPD's Office provides competent, diligent counsel to indigent defendants.

COMPLAINT                          -12-                        CASE NO. 8:24-cv-1920

**CALIFORNIA'S SEXUALLY VIOLENT PREDATOR ACT: HEALTH & WELFARE CODE SECTION 6600, *ET SEQ.***

42.     California Welfare and Institutions Code Section 6600, *et seq.*, the Sexually Violent Predator Act (SVPA) authorizes the state to "civilly commit individuals found to be SVPs after they conclude their prison terms." *DeCasas*, 54 Cal. App. 5th at 802 (citations omitted). The dual purposes of the SVPA "are to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders." *Vasquez*, 27 Cal. App. 5th at 42. "The statutory scheme establishes a multiple-level review for inmates who may be SVPs." *State Dep't of State Hosps. v. Superior Court*, 61 Cal. 4th 339, 344 (2015) (footnotes omitted). Ultimately, if the requisite number of evaluators agree after a standardized assessment "'that [a] person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health . . . forward[s] a request for a petition for commitment' to the designated counsel of the county in which the inmate was convicted." *Id.* at 345 (citing Former § 6601, subd. (d), now subd. (i)).

43.     Under Section 6601, subd. (i), each county's board of supervisors is required to designate either the district attorney or the county counsel to pursue SVPA civil commitment actions. In Orange County, the Board of Supervisors has designated the Office of the District Attorney. After screening by CDCR, if two DSH evaluators find a potential committee meets the criteria, DSH refers them to the DA to file a petition. If the first two evaluators split, a second pair is appointed. Welf. & Inst. Code § 6601(e). If the first pair or the second pair agree that the person qualifies, the district attorney may file a petition for commitment and after a facial review of the petition the Superior Court can order the respondent held pending a probable cause hearing which "shall" commence within ten days. *Id.*; *see also id.* at § 6601.5. The Superior Court then conducts a hearing to determine

COMPLAINT                          -13-                          CASE NO. 8:24-cv-1920

whether there is probable cause that the accused person is likely to be an SVP. *Id.* § 6602.

44. If the Superior Court finds there is no probable cause after a hearing per § 6602, or if the trier of fact finds the petition is not proven beyond a reasonable doubt after a trial, the court dismisses the petition and orders its subject to be released. § 6604.

45. "[I]f the court finds probable cause . . . the court orders a trial to determine whether the person is an SVP under section 6600." *Reilly v. Superior Court*, 57 Cal. 4th 641, 647 (2013). Pending trial, the person can be detained at the State Hospital. § 6602.5. "Though civil in nature, this trial contains a number of procedural safeguards commonly associated with criminal trials, including the alleged SVP's right to a jury trial, to assistance of counsel, and to a unanimous jury finding that he or she is an SVP beyond a reasonable doubt before he or she may be committed." *E.g.*, *Reilly*, 57 Cal. 4th at 647 (internal statutory citations omitted). Upon the alleged SVP's request, appointed counsel shall help the person obtain an independent expert to evaluate him or participate in his trial. § 6603(a). However, while "[t]he constitutional requirement of due process . . . applies to SVPA commitment proceedings and requires a trial within a meaningful time," the "SVPA does not specify a time within which a trial must be held after the court makes a probable cause finding." *DeCasas*, 54 Cal. App. 5th 785 (citations and internal quotation marks omitted).

46. A person ultimately found by a jury to be an SVP is "committed for an indeterminate term to the custody of [the State Department of State Hospitals (DSH)] for appropriate treatment and confinement in a secure facility." *Id.* Notably, only once a person is civilly committed pursuant to a jury trial are they entitled to annual examinations "to assess whether the person is still likely to engage in sexually violent criminal behavior if discharged." *See State Dep't*, 61 Cal. 4th at 344 (citing § 6605, subd. (a)). Further, after a person is committed—not

COMPLAINT                    -14-                    CASE NO. 8:24-cv-1920

just detained and awaiting trial—they can petition the court to order an independent evaluation if the annual review finds against them. *See* § 6608.

## FACTUAL AND PROCEDURAL BACKGROUND

47.    Richard Smith waited in detention for 20 years for a motion and trial that never came. In those twenty years, he was represented by at least five different deputy public defenders. Over the course of his SVP matter, at least 11 different public defenders appeared on his behalf.  Despite his requests for his public defenders to challenge his unlawful civil detention by bringing a "*Vasquez/Litmon*" or speedy trial motion, bring him to trial, or otherwise provide a plan for his release, none of his public defenders did so. On information and belief, Mr. Smith's public defenders' files and notes will reflect these requests, which were made by letter, as well as by phone or during in-person visits.

A.    **For Twenty Years the Court Issued Pre-Trial Continuances and Stays While Mr. Smith Was Detained Waiting for Trial.**

48.    On or about March 6, 2002, the Orange County District Attorney filed the SVP petition against Mr. Smith based on the evaluations of Dr. Dana Putnam, Ph.D., and Charles Jackson Ph.D.[8] The court appointed OCPD to represent Mr. Smith. On or about March 25, 2002, the superior court ordered Mr. Smith detained based on a facial review of the petition, holding that the petition contained sufficient facts that if true, would support probable cause pursuant to Welfare and Institutions Code 6601.5. Mr. Smith was then entitled to a probable cause hearing within 10 days. *Id.* Mr. Smith's deputy PD waived time for the probable cause hearing.

49.    But Mr. Smith *never* had a probable cause hearing.  Instead, on February 27, 2007—*five years after the OCPD filed the SVP petition against him—*

---

[8] Mr. Smith's twenty-year case file is too extensive to fully set forth in detail here. Instead, this Complaint attempts to highlight the significant developments over the course of his lengthy detention.

COMPLAINT                                -15-                        CASE NO. 8:24-cv-1920

Mr. Smith's public defender waived the hearing to which Mr. Smith was entitled per Section 6602.

50.    On information and belief, Mr. Smith was present on September 27, 2002, when the superior court entered a waiver of his presence at all motions to set or continue the probable cause hearing or his jury trial.  On information and belief, Mr. Smith *did not appear again in superior court for four years*, until November 28, 2006, for a hearing on a motion to dismiss on the basis that, by then, two pairs of evaluators had split on the issue of whether Mr. Smith qualified as an SVP. The court denied the motion.

51.    In October 2002, Mr. Smith was ordered transferred to Atascadero State Hospital—a DSH facility where SVP detainees were detained at that time.

52.    On information and belief, the superior court set a pretrial hearing on Mr. Smith's SVP case for the first time on March 5, 2004, almost two years after the OCPD filed the SVP petition against Mr. Smith.  This hearing was continued at least nine times over the course of the next year.  On information and belief, the superior court did not find good cause for these continuances.

53.    A pretrial hearing was then set for July 8, 2005.  On September 15, 2005, Mr. Smith was transferred to DSH-Coalinga.  The July 8 pretrial hearing was continued at least once and was later set for September 30, 2005.  This hearing was continued at least once and set for December 2, 2005.  On information and belief, the superior court did not find good cause for these continuances.

54.    On December 2, 2005—almost three years after the SVP petition was filed against him—the superior court set a probable cause hearing for February 14, 2006.  Although the record is unclear, it appears that this "probable cause hearing" along with Mr. Smith's pre-trial hearing was continued a number of times, to July 28, 2006—more than four years after the OCPD filed the SVP petition against him. On information and belief, the superior court did not find good cause for these

continuances.  Four years into Mr. Smith's civil detention, he had received neither a probable cause hearing nor a trial.

55.   On or about May 1, 2006, Dr. Putnam, provided an updated evaluation finding that Mr. Smith continued to meet the criteria for an SVP.  On or about May 14, 2006, Dr. Mark Shwartz, Ph.D., another state psychologist, found that Mr. Smiith *did not* meet the criteria for an SVP.  This was the first split in state evaluators.  If Mr. Smith had received the trial he repeatedly requested, this information would have been relevant and subject to cross examination at trial.

56.   On or about September 5, 2006, another state evaluator, Nancy Rueschenberg, Ph.D., found Mr. Smith met the criteria for an SVP.  On or about August 22, 2006, Dr. Gary Zini, Ph.D., another state psychologist, found that Mr. Smiith *did not* meet the criteria for an SVP.  This was a second split in state evaluators.  If Mr. Smith had received the trial he repeatedly requested, this information would have been relevant and subject to cross examination at trial.

57.   At some point, PD Barnum hired an evaluator, Hy Malinek, Psy.D, who found in October 2007 that Mr. Smith *did not* meet the criteria for an SVP. If Mr. Smith had received the trial he repeatedly requested, this information would have been relevant and admissible at trial.

58.   On or about July 28, 2006, Mr. Smith's PD requested new evaluators and Mr. Smith's trial was continued to September 15, 2006.  This date was continued at least once.  PD Barnum filed a motion to dismiss the SVP petition on November 20, 2006, four and a half years after the petition was filed against Mr. Smith, and a probable cause hearing date was set for November 27, 2006. However, as noted above, on November 27, 2006, the superior court set a hearing on the motion to dismiss filed by PD Barnum for November 28, 2006.  On that date the superior court denied PD Barnum's motion to dismiss and motion for new evaluations.

COMPLAINT                    -17-                    CASE NO. 8:24-cv-1920

59.   On February 2, 2007—approximately five years after the SVP petition against him was filed, Mr. Smith waived his right to a probable cause hearing. On information and belief, there is no record of any advantage Smith gained by waiving this right.

60.   Little appears to have happened in Mr. Smith's SVP petition for the next three years until March of 2010—eight years after the OCPD filed the SVP petition against him— when the PD filed a "*Ronje*" motion for new evaluations, new evaluators, and a new probable cause hearing, which the Court granted as to new evaluations in November of 2010.[9]

61.   On or about February 2 and 7, 2011, a simultaneous pair of evaluators, Drs. Reuschenberg and Putnam respectively, *changed their opinions and found that Mr. Smith did not meet the criteria of an SVP*.  At this point in his SVP petition, Mr. Smith had approximately as many or more "negative" evaluations finding him *not* meet the criteria of an SVP as he did "positive" evaluations finding him to meet the criteria of an SVP.  If Mr. Smith had received the trial he repeatedly requested, this information would have been relevant and subject to cross examination at trial.

62.   In January 2011, the superior court found that Mr. Smith was entitled to a new probable cause hearing per the 2010 *Ronje* motion.  At this point, Mr. Smith's SVP petition had now been pending for almost nine years.

63.   Over the course of the next approximately seven years, Mr. Smith's public defenders and the district attorneys prosecuting his SVP petition engaged in appeals to the California Courts of Appeal and the Supreme Court of California to challenge various rulings, including an order that the district attorney was allowed to hire its own evaluators even where a pair of state evaluators found an alleged

---

[9] *In re Ronje*, 179 Cal. App. 4th 509 (2009), *disapproved on other grounds by Reilly v. Superior Ct.*, 57 Cal. 4th 641 (2013) (holding that the protocol for SVP evaluations was an underground regulation and granting new evaluations and probable cause hearings).

COMPLAINT                         -18-                    CASE NO. 8:24-cv-1920

SVP not to meet the criteria of an SVP and an order that the district attorney was entitled to Mr. Smith's records. The superior court stayed Mr. Smith's case in April 2011—more than nine years after the SVP petition was filed against Mr. Smith.

**B.**   **Mr. Smith's PDs Failed to Give Him the Trial He Demanded or Even a PC Hearing for Five Years, After Which They Apparently Advised Him to Waive His Probable Cause Hearing.**

64.   Mr. Smith sent letters to his PDs which included requests for a trial despite the fact that on July 7, 2003, Senior District Attorney Deborah Barnum responded to one of Mr. Smith's letters stating that "[o]nce again your letter has necessitated me writing to you to explain things that should not require explaining. It appears to me that you did not write this letter that I received July 3rd. I want to respond to your letters, I just wish you would keep in mind that have been an attorney for 18 years and have done approximately 200 jury trials." Unfortunately, none of those jury trials were in Mr. Smith's case, despite his requests for a trial.

65.   However, Mr. Smith continued to request a trial. For example, in March 2006—more than four years after the SVP petition was brought against him—Mr. Smith wrote to PD Barnum explaining that another alleged SVP was released after a unanimous jury verdict finding him *not to be* an SVP despite the fact that in that case the alleged SVP had more victims than did Mr. Smith. Therefore Mr. Smith expressed his hope that Ms. Barnum would be able to similarly get him released.

66.   On or about October 17, 2006—more than four years after the SVP petition was brought against him—Mr. Smith wrote to his then-appointed public defender Deborah Barnum asking her to "[p]lease do not get angry," with him for writing her a letter. (This is likely due to Ms. Barnum's response above, Paragraph 48). He went on to explain that she had conveyed to him over the phone that despite having a split in evaluators, his SVP petition could not be dismissed because he had not yet been committed as an SVP. Unfortunately, because Mr.

COMPLAINT                                    -19-                               CASE NO. 8:24-cv-1920

Smith never had a trial to determine whether he was an SVP, he was neither able to challenge that split in evaluators, nor was he able to petition for his release when he received negative evaluations as he would have been able to do had he been committed by a jury. (In fact, as detailed below, Mr. Smith had not just a split but two simultaneously negative evaluators, but the Superior Court refused to dismiss his case, resulting in a decade of appeals pursued without regards to the fact that Mr. Smith was detained the entire time without a finding of his SVP status by a jury.)

67.     The delay in Mr. Smith's case and the reasons for the delay of his trial are akin to the facts described and ultimately found to be unreasonable in *People v. Superior Court (Vasquez),* 27 Cal. App. 5th 36, 56 (2018). But the facts of Mr. Smith's case are in one sense even more egregious: Mr. Smith's public defenders knew at all times that Mr. Smith had a defensible case yet refused to bring him to trial.  They also allowed years to pass without meaningful progress on Mr. Smith's SVP petition.

68.     For example, Mr. Smith's three marriages reduced his risk of recidivism. Long-term relationships are recognized as a protective factor in sex offender forensic psychology.

69.     Also, Mr. Smith was completely offense-free for a period of six years.

70.     In addition, his first predicate conviction was in 1968—more than 30 years prior to the SVP petition being filed against him.  The second was in 1990—more than 12 years prior to the SVP petition being brought against him.  In fact, in all of Mr. Smith's criminal history, he had only those two qualifying sexual convictions, which were remote in time.

71.     Mr. Smith's two predicate sexual convictions were 12 and 30 years old at the time the SVP petition was filed against him, which would have been relevant and admissible at his trial, for which the standard was beyond a reasonable doubt. The chronological remoteness of Mr. Smith's criminal cases, his personal

COMPLAINT                              -20-                         CASE NO. 8:24-cv-1920

background, and his numerous negative evaluations, some of which were from psychologists who changed their opinions of Mr. Smith, would have been relevant and admissible had he been given the trial he repeatedly requested.

72. Mr. Smith was severely prejudiced in his case by his public defender's refusal to bring his case to trial prior to 2011 when the superior court (and later the appellate court) stayed his case pending appeal. After this point, Mr. Smith had no recourse to challenge the fact that he had been committed and petition for his release because he had never been committed. In addition, he could not challenge any of the court's findings once his case was stayed.

**C. The Orange County Superior Court Dismissed the District Attorney's SVP Petition in September 2022 When the DA was Unable to Proceed to Trial After 20 Years.**

73. In contrast to *Vasquez* and other like California cases, Mr. Smith did not have the opportunity to litigate his right to a speedy trial, since his case was ultimately dismissed when the district attorney was unprepared to go to trial after 20 years. At that time, the appellate courts, after a decade of writs and appeals, had not yet determined whether the DA was entitled to hire its own experts to evaluate Mr. Smith despite the fact that at least four state evaluators had found him not to be an SVP.

74. But the petition against Mr. Smith was dismissed only after he spent more than 20 years in unnecessary, unlawful, and unconstitutional pretrial civil detention. The superior court ordered that the SVP petition against Mr. Smith be dismissed when the DA was unable to proceed with trial in September 2022—20 years after the OCPD filed the SVP petition against him. Upon his release, at the age of 79, Mr. Smith moved to Orange County, California.

**D. Mr. Smith Was Diligent in Seeking to Enforce His Rights While He Was Detained in Coalinga State Hospital.**

75. As explained above, Mr. Smith told his public defenders throughout his pre-trial detention over the phone and in letters, as described in part above, and

COMPLAINT                                    -21-                          CASE NO. 8:24-cv-1920

at in-person visits at DSH-C, that he wished to go to trial or otherwise secure his release. Mr. Smith's public defenders recorded these letters in Mr. Smith's file. On information and belief, Mr. Smith's public defenders also recorded Mr. Smith's requests in their notes to Mr. Smith's file.

**E.     Mr. Smith Was, Unfortunately, the Rule, Not the Exception.**

76.    A September 2020 report by the California Sex Offender Management Board (CASOMB), titled Sexually Violent Predator Project: Introduction & Duration of SVP Detainee Status noted that "[t]he total number of individuals ever committed as SVPs represents less than 1% of all individuals registered as sexual offenders in California." Yet "California's SVP program has more inpatients than any of the 21 states with 'Sexually Violent Predator' laws."[10] The report goes on to state:

> The current census of nearly 1,000 total SVPs represents roughly 15% of the national total and is comprised of detainee (WIC6602, Probable Cause) and fully committed (WIC6604) categories. ***California has the highest number of detainees nationally, representing nearly half its total SVP population***. Not just the number of detainees is exceptional, but also the duration of detainee status is much longer than that of other states with SVP programs.[11]

77.    Perhaps as a result, the California Sex Offender Management Board's Year-End Report to Legislature 2020 recommended a number of changes to the implementation of California's SVP law and states:

> California's number and duration of detainees make its Sexually Violent Predator (SVP) law implementation highly atypical compared to other states with similar laws, and severely compromises its efficiency and efficacy. ***It gives rise to procedural due process concerns.*** It takes an extraordinarily long time for individuals to get processed through SVP commitment proceedings, while being involuntarily detained past their prison sentence, all at an excessive cost. For the portion of detainees that will go on to get committed, the lengthy duration of proceedings is

---

[10] CAL. SEX OFFENDER MGMT. BD., SEXUALLY VIOLENT PREDATOR PROJECT: INTRODUCTION & DURATION OF SVP DETAINEE STATUS, at 1, Sept. 2020, *available at* 2020_CASOMB_Annual_Report.pdf (citations omitted, emphases added).

[11] *Id.* (emphasis added).

COMPLAINT                                    -22-                        CASE NO. 8:24-cv-1920

time wasted where they could have applied themselves meaningfully in treatment. ***For the portion of detainees that eventually do not get committed, the years lost to pending commitment proceedings are an unfair and unnecessary loss of liberty***.

. . .

CASOMB finds the efficacy and efficiency of California's SVP program are severely compromised by having too many detainees that are held for too long pending trials. . . . ." [12]

78.     Notably, the CASOMB Year-End Report found that "[t]he detainees at the state hospital ***awaiting commitment proceedings*** have been there for an average of six years, and twenty-five percent (25%) have been there more than 10-years [citation]. Roughly, six out of ten detainees [only slightly more than half] have been eventually fully committed." [13]

79.     Unsurprisingly, other SVP detainees represented by the Orange County Office of the PD have also experienced extraordinary delays in getting to trial.  For example, in *People v. Jackson*, the California Court of Appeal noted that the petition filed against the respondent alleged SVP was filed in 2007, but no trial was set until 2019.  75 Cal. App. 5th 1, 9-11 (2022) (addressing issues other than challenge to the length of delay in bringing case to trial); *see also generally Needham v. Superior Ct. of Orange Cnty.*, 16 Cal. 5th 333, 349 (2024) (addressing other issues but noting alleged SVP was awaiting trial on his SVP petition since at least 2016).

80.     Mr. Smith's exceptionally long and unconstitutional pre-trial detention is the result of the custom and practices of the Orange County Office of the PD, which include, but are not limited to the following: failing to timely bring alleged SVPs to trial; failing to timely conduct probable cause hearings; failing to get

---

[12] CAL. SEX OFFENDER MGMT. BD., YEAR-END REPORT TO LEGISLATURE 2020, at 22-23, Feb. 2021, *available at* 2020_CASOMB_Annual_Report.pdf.

[13] *Id.* at 23 (emphasis added).

COMPLAINT                    -23-                    CASE NO. 8:24-cv-1920

written time and trial waivers from alleged SVPs; and failing to declare conflicts so that alleged SVPs can challenge their exceptionally long trial delays.

81. The Orange County District Attorney's Office and the Orange County Superior Court were aware of and complacent in the OCPD's custom and practice of failing to bring SVP petitions to trial, apparently content that alleged SVPs were detained whether or not they were found to be an SVP.

**F. Mr. Smith Experienced Significant Physical and Emotional Distress as a Result of His Unconstitutional Ten-Year Detention.**

82. While detained at the Orange County Jail and Atascadero and Coalinga State Hospitals awaiting trial, Mr. Smith experienced significant physical and emotional injury and distress.

83. In 2019 or 2020 Mr. Smith was diagnosed with age-related macular degeneration, which has severely impaired his eyesight and which on information and belief went undiagnosed and untreated while he was in custody.

84. While Mr. Smith was detained in the state hospital, his sisters, Ruby and Lydia, and his cousin, Shirley, died. Because he was detained, Mr. Smith was wrongly prevented from spending time with his family members prior to their deaths.

85. Mr. Smith also lost twenty years of time he could have spent with his sister, Irene, who was more than ninety years old when he was released, and whom he now visits every week.

86. Mr. Smith was very distressed by the fact that he continued to be detained without trial after numerous state evaluators declared he was not an SVP.

87. Mr. Smith also suffered from the emotional distress caused by the uncertainty resulting from a pre-trial detention of indefinite and potentially permanent duration.

COMPLAINT                                    -24-                          CASE NO. 8:24-cv-1920

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (DELIBERATE INDIFFERENCE CAUSING A CONSTITUTIONAL VIOLATION OF RIGHTS PURSUANT TO 42 U.S.C. § 1983 —AGAINST DEFENDANTS SCHWARZ, PETROSINO, OSPINO, KWAST, THE OFFICE OF THE OCPD, THE ORANGE COUNTY BOARD OF SUPERVISORS, AND ORANGE COUNTY)

88.    Plaintiff hereby incorporates and realleges each and every allegation set forth above as though fully set forth herein.

89.    This action is brought pursuant to 42 U.S.C. § 1983 for violation of Mr. Smith's due process rights under Fourteenth Amendment.

90.    Defendants the OCPD, the Orange County Board of Supervisors, and Orange County, are sued herein as administrators of the Office of the OCPD.

91.    Defendants Schwarz, Petrosino, and Kwast did not represent Mr. Smith as trial attorneys or appear as counsel for Mr. Smith in any of the underlying SVP proceedings described herein, and Defendant Ospino appeared on Mr. Smith's behalf only minimally. As such, liability against these defendants is not based on these defendants acting within the scope of legal representation of Mr. Smith.

92.    Defendants Schwarz, Petrosino, Ospino, and Kwast, pursuant to policies and practices, failed to challenge Mr. Smith's extensive detention, failed to inform Mr. Smith of his right to a speedy trial, failed to meaningfully challenge Mr. Smith's proposed civil commitment, failed to object to hearsay relied on at Mr. Smith's probable cause hearings, failed to timely bring Mr. Smith's SVP petition to trial, failed to institute training programs for handling SVP petitions and civil commitments to ensure that Mr. Smith's trial would take place in a timely manner, failed to declare a conflict to allow Mr. Smith to challenge his failure to receive a speedy trial, and failed to ensure that he received competent and diligent counsel. By thus abandoning their ethical and statutory duty to Plaintiff, said defendants

COMPLAINT                          -25-                    CASE NO. 8:24-cv-1920

allowed Plaintiff to be held as a pre-trial detainee for such an inordinately long period of time that his due process rights were violated.

93.     Defendants Schwarz, Petrosino, Ospino, and Kwast, were specifically aware that their subordinates were not providing diligent counsel to their SVP clients and that the failure to bring those clients to trial violated their constitutional rights. Defendants Schwarz, Petrosino, Ospino, and Kwast failed to act to prevent the attorneys of the Office of the OCPD from engaging in the acts and omissions described herein, which they reasonably should have known would deprive Mr. Smith and other similarly situated SVP clients of their rights. As a direct result of the deliberate indifference of these defendants, Mr. Smith endured 20 years in detention waiting for his case to come to trial before it was finally dismissed.

94.     When and before Mr. Smith's underlying petition was dismissed, there existed within the Office of the OCPD various customs and practices, as alleged herein, which caused the delay in Mr. Smith's case being brought to trial and which caused Mr. Smith to unnecessarily spend more than a decade as a pre-trial detainee waiting for his case to be brought to trial.

95.     Defendants Schwarz, Petrosino, Ospino, and Kwast, the Office of the OCPD, and the Orange County Board of Supervisors through their final policymakers, were specifically aware of the inordinate and excessive delay that Mr. Smith and numerous other SVP detainees were experiencing in the processing of their cases and that Plaintiff's case and the other cases were not being challenged or brought to trial on a timely basis. Said defendants were aware of the customs and practices described above that existed at the SVP Unit with respect to SVP detainees and which were the causes of the failure to bring these cases to trial in a timely fashion.

96.     Despite knowing of the great magnitude of the delays in litigating SVP cases and bringing Mr. Smith and other similarly situated SVP Detainees to trial, Defendants Schwarz, Petrosino, Ospino, and Kwast, the Office of the OCPD, and

COMPLAINT                    -26-                    CASE NO. 8:24-cv-1920

the Orange County Board of Supervisors through their final policymakers, failed to take any reasonable measures to ensure that the constitutional rights of Mr. Smith were protected when he was a client of the OCPD's Office.

97. The above-described failures constituted deliberate indifference to the due process rights of Mr. Smith.

98. Defendants Schwarz, Petrosino, Ospino, and Kwast, the Office of the OCPD, and the Orange County Board of Supervisors through their final policymakers, knowingly refused to terminate the acts, customs, practices, and misconduct of their subordinates, which they knew were causing and would cause constitutional injury upon the SVP detainees in their charge. Said defendants failed to take reasonable measures to institute internal measures and training programs within the SVP Unit with respect to SVP detainees to ensure their attorneys fulfilled their ethical duties to zealously protect the interests of their clients, failed to address the long delays in getting SVP cases to trial, failed to institute new training of their subordinates in the management of SVP cases so as to ensure that SVP cases were litigated and got to trial in a timely fashion, and failed to discipline their subordinates for failing to proceed in a timely fashion.

99. The above-described failures on the part of Defendants Schwarz, Petrosino, Ospino, and Kwast, the Office of the OCPD, and the Orange County Board of Supervisors through their final policymakers, constituted an acquiescence in the constitutional deprivations that resulted or constituted a reckless and callous indifference to the rights of SVP detainees, including Mr. Smith.

100. As a result of the above deliberate acts and omissions of Defendants Schwarz, Petrosino, Ospino, and Kwast, the Office of the OCPD, and the Orange County Board of Supervisors through their final policymakers, Mr. Smith was damaged and injured as alleged above by being made to endure a wrongful 20-year pre-trial detention.

COMPLAINT                              -27-                        CASE NO. 8:24-cv-1920

101. The conduct Defendants Schwarz, Petrosino, Ospino, and Kwast, the Office of the OCPD, and the Orange County Board of Supervisors through their final policymakers, as alleged above, was done with deliberate indifference to the constitutional violations endured by Mr. Smith. As such, punitive damages should be imposed, in an amount sufficient to punish the named defendants and to deter future similar conduct by these defendants and others in similar positions.

## SECOND CLAIM FOR RELIEF

**(MUNICIPAL LIABILITY FOR VIOLATION OF CONSTITUTIONAL RIGHTS AS TO DEFENDANTS OFFICE OF THE OCPD, ORANGE COUNTY, AND THE ORANGE COUNTY BOARD OF SUPERVISORS)**

102. Plaintiff hereby incorporates and realleges each and every allegation set forth above as though fully set forth herein.

103. This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourteenth Amendment.

104. Plaintiff's due process rights were violated by the egregious 20-year delay in challenging his detention or bringing his case to trial as determined by the Orange Superior Court and as alleged above in the first claim for relief. As a result of the acts and omissions of the Office of the OCPD, Orange County, and the County of Orange Board of Supervisors through its final policymakers, as described above, Mr. Smith's Fourteenth Amendment due process rights were violated.

105. At the time of these constitutional violations by said defendants, the Office of the OCPD had in place, and had ratified widespread customs and practices, which permitted and encouraged attorneys in the Office of the OCPD to delay litigating SVP cases, which violated the due process right of their SVP clients, including Mr. Smith.

106. These practices, customs, policies, and procedures included:

    a. failing to challenge probable cause evidence;

COMPLAINT                -28-                CASE NO. 8:24-cv-1920

b. failing to regularly bring SVP detainees to court for hearings, or to otherwise ensure that SVP detainees were in court or that they would appear by video conference, so as to conceal from SVP detainees their delays in processing their cases in a timely manner;

c. failing to communicate to SVP client/detainees the status of their cases, the strategies which were to be employed in defending their case, the likely duration of the delays, and the likelihood of success of their efforts;

d. failing to obtain consent from SVP client/detainees to continue hearing dates, trial dates, and other deadlines which were in their control;

e. waiving SVP client/detainees' appearance at hearings without securing their authority to do so;

f. agreeing to repeated continuances sought by the prosecution;

g. ignoring requests from SVP clients/detainees to bring their case to trial promptly;

h. failing to meet reasonable deadlines in SVP cases;

i. allowing experts' reports to lapse or otherwise go stale;

j. allowing SVP cases to sit idle for years without meaningful progress;

k. failing to declare unavailability, such that long-delayed SVP cases could be assigned to outside/independent counsel;

l. failing to declare such conflicts so as to permit their SVP detainees to file *Litmon-Vasquez* speedy motions after the extensive delays in the processing of their cases;

COMPLAINT                                          -29-                                    CASE NO. 8:24-cv-1920

m. failing to implement adequate training policies within the Office of the OCPD to prevent constitutional violations by their attorneys in their handling of their SVP caseloads;

n. failing to maintain adequate contact with clients;

o. failing to tell clients that delays or continuances were requested by the public defenders rather than by the DA or Court;

p. waiving probable cause hearings and submitting probable cause hearings on the written evaluations against the clients' interest.

q. failing to advise clients of their rights and of changes in the law; and

r. failing to advocate for clients at the State Hospital to promote their success in treatment.

107. Deliberate indifference to the civil rights of SVP detainees such as Mr. Smith is evidenced by said defendants ignoring the long delays in bringing SVP cases to trial and the long pre-trial detentions suffered by SVP clients, which were obvious and known consequences of the widespread practices, customs, policies, and procedures described herein.

108. The foregoing acts, omissions, and systemic deficiencies are and were widespread customs, practices, policies and procedures of defendants Orange County, the Orange County Board of Supervisors by and through its final policymakers, and the Office of the OCPD, and by ratifying such, these defendants permitted and encouraged attorneys both in the Office of the OCPD to delay bringing SVP cases to trial in a timely fashion. This caused, permitted, and/or allowed under official sanction the attorneys of the Office of the OCPD to believe that the long delays in bringing SVP cases to trial would not be objectively, thoroughly, and/or meaningfully investigated and that no negative consequences would befall them, all with the foreseeable result that the Office of the OCPD

COMPLAINT                    -30-                    CASE NO. 8:24-cv-1920

would greatly delay in bringing SVP cases to trial and thereby violate the civil rights of the SVP detainees in their charge, including Mr. Smith.

109.   As a direct and proximate result of the aforementioned acts and omissions alleged herein, Mr. Smith endured 20 years of wrongful detention in violation of his due process rights, which caused him serious and permanent injuries and which has physically, psychologically, and emotionally impaired him permanently. A judicial finding of such a violation is not adequate to redress the suffering experienced by Mr. Smith as a direct result.

## PRAYER FOR RELIEF

110.   Wherefore, plaintiff Richard Smith demands the following relief, against all the Defendants with respect to each of the claims for relief above:

  a. Compensatory general and special damages in an amount in accordance with proof;

  b. Punitive and exemplary damages, against Martin Schwarz, Sharon Petrosino, Frank Ospino, and Deborah Kwast, in their personal capacities, in an amount sufficient to deter and to make an example of these defendants;

  c. Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988;

  d. Costs of suit necessarily incurred herein;

  e. Such other and further relief as the Court deems just or proper.

## DEMAND FOR JURY TRIAL

111.   Plaintiff Richard Smith hereby demands a jury trial.

/ / /

/ / /

COMPLAINT                    -31-                    CASE NO. 8:24-cv-1920

Respectfully submitted,

DATED:  September 4, 2024        LIVE OAK LAW OFFICE LLP


By: */s/ Pilar R. Stillwater*

     Pilar R. Stillwater
     Robyn Fass Wang
     Attorneys for Plaintiff
     RICHARD SMITH

COMPLAINT                          -32-                   CASE NO. 8:24-cv-1920